Michael J. Frevola
Christopher R. Nolan
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFFS
BULKHANDLING HANDYMAX AS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BULKHANDLING HANDYMAX AS,

            Plaintiff,

      -against-

SUNMALL MARINE INC. and
EVERMONT INTERNATIONAL LTD.,

            Defendants.

---

08 Civ. _____ (_____)

**VERIFIED COMPLAINT**

---

Plaintiffs, Bulkhandling Handymax AS ("Bulkhandling") by and through their attorneys, Holland & Knight LLP, for their verified complaint against defendants, Sunmall Marine Inc. ("Sunmall") and Evermont International Ltd. ("Evermont") (collectively "Defendants"), allege as follows:

1.      This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.     At all times material herein, plaintiff Bulkhandling was and is a business entity organized and existing under the laws of Norway and maintains a place of business at Postboks 182-Skoyen, Oslo, Norway.

3.     Upon information and belief, at all times material herein, defendant Sunmall was and is a business entity organized and existing under the laws of Taiwan and maintains a place of business at 2F No. 263, Da Tung Road, Sec. 2, His-Chih City, Taipei Hsien, Taiwan.

4.     Upon information and belief, at all times material herein, defendant Evermont is a business entity organized and existing under the laws of the Taiwan with a registered address at 2F No. 263, Da Tung Road, Sec. 2, His-Chih City, Taipei Hsien, Taiwan.

5.     On or about February 5, 2008, Bulkhandling and Sunmall entered into a voyage charter party (the "Charter") to ship 50,000mt (10% more or less at owner's option) of cement clinker on the M/V SPAR ORION (or substitute vessel) from Rizhao Port, China to Mesaleed Port, Qatar. A true and correct copy of the Charter is annexed hereto as Exhibit 1.

6.     Under Clause 4 of the Charter and by letter dated April 13, 2008, defendant Evermont agreed to fully guarantee Sunmall's performance under the Charter and indemnify Bulkhandling for any loss or damages sustained due to Sunmall's non-performance. A true and correct copy of Evermont's Letter of Guarantee is annexed hereto as Exhibit 2.

7.     Under Clause 32 of the Charter, the demurrage rate was US$30,000 per day, pro rata for any part of a day. The rate of despatch was half the demurrage rate for any laytime saved.

8.     Bulkhandling incurred demurrage due to delays at the discharge port during the voyage in the amount of US$562,692.60. The laytime was adjusted as per commissions and

despatch at the load port so that the total due to Bulkhandling in demurrage is $538,463.53. A true and correct copy of the laytime statement is attached as Exhibit 3.

9.    Despite repeated demands to Sunmall that it make the outstanding payments due to Bulkhandling, and for Evermont to make payments on behalf of Sunmall per the terms of the guarantee letter, the monies owed remain outstanding.

10.    The terms of the Charter call for arbitration in Hong Kong and the application of English law.

11.    While all disputes arising out of the Charter are to be arbitrated in Hong Kong, the action herein is submitted in accordance with Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure as well as 9 U.S.C. §8, is not and cannot be considered a waiver of the Charter's arbitration clause.

12.    Based on the preceding, Sunmall and Evermont as guarantor owe Bulkhandling US$538,463.53 under the Charter for demurrage on the voyage.

13.    In Hong Kong arbitrations where English law applies, costs, including a reasonable allowance for attorney's fees are routinely awarded.

14.    Upon information and belief it will take approximately two years to arbitrate this dispute to conclusion, resulting in the following estimated interest and attorneys' fees and costs:

| | | |
|---|---|---|
| Interest: | $ 53,846.35 | ($538,463.53 x 0.050/year x 2 years) |
| Attorneys' fees and costs | $ 200,000.00 | |
| Total Principal Claim: | $ 538,463.53 | |
| Total Sought: | **$ 792,309.88** | |

15.    Sunmall and Evermont are not found within the Southern District of New York but do have goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to it, is claimed by it, is being held for it or on its behalf, or which is being transferred for its benefit, within the jurisdiction and held in the name(s) of Sunmall Marine Inc. and/or Evermont International Ltd. with, upon information and belief, the following financial institutions: Bank of America, N.A.; Bank of China; The Bank of New York; Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale; Standard Chartered Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN Amro Bank; Bank Leumi USA; Banco Popular, or any other financial institution within the Southern District of New York.

**WHEREFORE**, Bulkhandling Handymax AS prays:

1.    That a summons with process of attachment and garnishment may issue against the defendants, Sunmall Marine Inc. and Evermont International Ltd.; and if defendants cannot be found, then that goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to them, is claimed by them, is being held for them or on their behalf, or which is being transferred for their benefit, within the district may be attached in an amount sufficient to answer plaintiff's claim;

4

2.    That defendants Sunmall Marine Inc. and Evermont International Ltd. and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3.    That judgment be entered in favor of Bulkhandling Handymax AS and against Sunmall Marine Inc. and Evermont International Ltd. in the amount of US$792,309.88 (including estimated interest, expenses and attorneys' fees); and,

4.    That this Court grant Bulkhandling Handymax AS such other and further relief which it may deem just and proper.

Dated: New York, New York
       June 19, 2008

HOLLAND & KNIGHT LLP

By:

Michael J. Frevola
Christopher R. Nolan
195 Broadway
New York, NY 10007-3189
Tel:    (212) 513-3200
Fax:    (212) 385-9010

*Attorneys for Plaintiff*
*Bulkhandling Handymax AS*

## **VERIFICATION**

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | :ss.: |
| COUNTY OF NEW YORK | ) |

MICHAEL J. FREVOLA, being duly sworn, deposes and says:

I am associated with the firm of Holland & Knight LLP, counsel for Bulkhandling Handymax AS ("Bulkhandling"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Bulkhandling and corresponded with Bulkhandling's representatives regarding this matter. I am authorized by Bulkhandling to make this verification, and the reason for my making it as opposed to an officer or director of Bulkhandling is that there are none within the jurisdiction of this Honorable Court.

_____
Michael J. Frevola

Sworn to before me this
19th day of June, 2008

_____
Notary Public

Linda M. Wilkens
Notary Public, State of New York
No. 01WI9672455
Qualified in Queens County
Certificate filed in New York County
Commission Expires September 30, 2010____

6

# EXHIBIT 1

11/06 2008 10 23 FAX

| | |
|---|---|
| **1.** MATRIX SHIPPING | Shipbroker | RECOMMENDED THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976) INCLUDING "F.I.O." ALTERNATIVE, ETC. (To be used for trades for which no specially approved form is in force) CODE NAME: "GENCON" Part 1 |
| **3.** Owners/Place of business (Cl. 1) Bulkhandling Handymax As P.o.box 182, Skoyen 0212 OSLO NORWAY | | **2.** Place and date Beijing / 05TH Feb, 2008 |
| | | **4.** Charterers / Place of business (Cl. 1) Sunmall Marine Inc. 2F, NO. 263, SEC. 2, DA TUNG ROAD,HSI-CHIH CITY, TAIPEI HSIEN, TAIWAN (Performance to be guaranteed by Evermont Int'l Ltd.) |
| **5.** Vessel's name (Cl. 1) Mv SPAR ORION or Substitute | | **6.** GRT/NRT (Cl. 1) 26,449/16,181 |
| **7.** DWT all told on summer load line in metric tons (abt.) (Cl. 1) 47,639MT DWT ON 11.82M SSW TPC 50 | | **8.** Present position (Cl. 1) Now trading |
| **9.** Expected ready to load (abt.) (Cl. 1) 15th -22nd / Feb., 2008 | | |
| **10.** Loading port or place (Cl. 1) 1SBP RIZHAO PORT, CHINA AT S.W. 13.00M DRAFT | | **11.** Discharging port or place (Cl. 1) 1SBP OF MESAIEED PORT,QATAR (WHERE DRAFT 12.0M S.S.W) |
| **12.** Cargo (also state quantity and margin in Owner's option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1) 50,000 metric tons 10% more or less in owners' option. Cement Clinker in bulk | | |
| **13.** Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4) US\$29.50P/MT FIOST BSS 1/1 | | **14.** Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4) SEE CLAUSE 39 |
| **15.** Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless) | | **16.** Laytime (if separately laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| **16.** F.I.O.S.T. | | a) Laytime for loading SEE CLAUSE 28 |
| **17.** Shippers (state name and address) (Cl. 6) TO BE ADVISED | | b) Laytime for discharging SEE CLAUSE 29 |
| | | c) Total laytime for loading and discharging |
| **18.** Demurrage rate and manner payable (loading and discharging) (Cl. 7) SEE CLAUSE 32 | | **19.** Cancelling date (Cl. 10) 22ND / Feb., 2008 |
| **20.** Brokerage commission and to whom payable (Cl. 14) 2.5% address commission + 1.25% FOR MATRIX SHIPPING | | |
| **21.** Additional clauses covering special provisions, if agreed Rider Clauses No. 18 – No. 51 together with protective clause as attached, are deemed to form part of and to be included in this Charter Party. | | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) For and on behalf of Bulkhandling Handymax As | Signature (Charterers) For and on behalf of SUNMALL MARINE INC. |
|---|---|
| |  SUN MALL MARINE INC. |



Printed and sold by Fr. G. Knudtzons Bogtrykkeri A/S, 55 Toldbodgade, DK-1253 Copenhagen K, Telefax +45 33 93 11 84, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen

11/06 2008 10:24 FAX                                                                    ☒ 008/013

# PART II

## "Gencon" charter (As Revised 1922 and 1976)
### Including "F.I.O." Alternative, etc.

11/06 2008 10:23 FAX                                                                    @ 007/013

# PART II
### "Gencon" Charter (As Revised 1922 and 1976)
### including "F.I.O. Alternative, etc.

**GENERAL ICE CLAUSE**

**17. Port of loading**

(a) In the event of the loading port being inaccessible by reason of ice when vessel is ready to proceed from her last port or at any time during the voyage or on vessel's arrival or in case frost sets in after vessel's arrival, the Captain for fear of being frozen in is at liberty to leave without cargo, and this Charter shall be null and void.

(b) If during loading the Captain, for fear of vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter to be forwarded to destination at vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Receivers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per Charter.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Captain or Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter null and void unless Charterers agree to load full cargo at the open port.

(d) This Ice Clause not to apply in the Spring.

**Port of discharge**

(a) Should ice (except in the Spring) prevent vessel from reaching port of discharge Receivers shall have the option of keeping vessel waiting until the re-opening of navigation and paying demurrage or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Captain or Owners have given notice to Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Captain for fear of vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

# RIDER CLAUSES TO Mv Spar Orion / SUNMALL
## CHARTER PARTY DATED 05th Feb. 2008

18. **Hatch opening**
Opening and closing of hatches at each port to be for Owners' account subject to same being allowed by local regulations.

19. **Overtime**
Overtime to be for account of party ordering same, but if ordered by port authority or their representative, then such expenses to be for Charterers' account. Officers'/crew's overtime to be always for Owners' account.

20. **Lights/Gear**
Charterers' consignees shall, safety permitting, have the privilege of working all hatches at all times. The vessel shall supply lights as on board for night work, free of risk and expense to consignees, and cranes and grabs at each hold.

21. **Breakdown of Equipment**
Any time actually lost through lack of ship's power, breakdown or inefficiency of equipment or any neglect or fault of the vessel, its Owners, Master or Crew or their agent affecting the l oading or discharging operation shall not count as laytime.

22. **Grades**
Charterers shall have the option of carrying one(1) or more grades or parcels of cement clinker provided same carried within vessel's natural segregation.

23. **Cargo space**
No deep tank to be tendered for cargo. All space tendered shall be suitable for normal grab discharge. Any extra expense incurred in discharging cargo from places inaccessible to Receivers' mechanical grab shall be for Owners' account and any time thereby lost shall not be counted as laytime or time on demurrage.

24. **Stevedores**
Stevedores shall have the option of employing bulldozers in the holds. Charterers/Receivers to arrange and pay for stevedores to handle vessel's gear as well as for bulldozers for final trimming out of vessel's holds.

25. **Taxes/dues**
Any taxes and/or dues levied on cargo at loading and discharge port to be for Charterers' account, but any taxes/dues on the vessels or freight to be for Owners' account.

26. **Acts of God**
Perils of the sea; fire on board, in bulk or craft or on shore; barratry of the Master or Crew, enemies, pirates and thieves; arrests and restraints of princes, rulers or people; collision; strandings; and other accidents of navigation are expected, even when occasioned by negligence, default or error of judgment of the pilot, Master, mariners and/or other servant of the Owners. The Owners and/or the vessel's husband or manager shall not be liable for any loss or damage arising from explosion, bursting of boilers breaking of shaft or any latent defect in the machinery of hull not resulting from want of due diligence on their part. The Charterers is not answerable for r any negligence, de fault or error in judgment of their stevedores employed on loading or discharging of the cargo.

27. **Stevedores damage**
If any damage is caused to the vessel at the loading port and discharge port by the stevedores, the claim, if any, for such damage shall be settled directly between the owners and the stevedores. Failing which, Charterers will try best to assist owners in setting the claim. The master of the vessel shall lodge such claim, if any, on the stevedores within 48 hours after the damage has been sustained and then confirm in

Page 1, Total 10 pages



RIDER CLAUSES TO M/v Spar Orion / SUNMALL
CHARTER PARTY DATED 05ᵗʰ Feb., 2008

writing duly supported by the third party damage report, prior to the departure of the vessel from the loading or discharging port.

28. **Loading terms and Conditions.**

Loading rate is 20,000 metric tons per weather working day, Sunday(s) Holiday(s) included of 24 consecutive hours. This shall be used as basis for calculating the laytime.

LAYTIME AT LOADING PORT TO COUNT AT 14:00 HRS IF N.O.R.IS GIVEN BEFORE NOON OR AT 08:00 HRS NEXT DAY (INCL. SUN AND HOLIDAYS) IF NOR IS GIVEN DURING OFFICE HOURS AT OR IN THE AFTERNOON.
- SHIFTING TIME FROM ANCHORAGE TO BERTH NOT TO BE COUNT
- DRAFT SURVEY TIME NOT COUNT AS LAYTIME MORE THAN 03 HOURS.
- LAYTIME WILL STOP COUNTING UPON COMPLETION OF LOADING RESPECTIVELY DISCHARGING. CARGO DOCS TO BE DELIVERED TO THE VESSEL LATEST W/IN 03 HRS AFTER COMPLETION OF DRAFT SURVEYS. TIME IN EXCESS TO COUNT AS LAYTIME.
- TIME USED IF ANY BEFORE COMMENCEMENT OF LAYTIME TO COUNT BE.

N.O.R. TO BE TENDERED UPON VESSEL ARRIVAL LOADING PORT, MASTER HAS THE RIGHT TO TENDER NOR W/W/W/W.
- NOR NOT TO BE TENDERED PRIOR LAYDAYS.
- NOR AT LOADPORT TO BE GIVEN ALWAYS WITHIN OFFICE WORKING HOURS BETWEEN 08:00/17:00 MONDAY TO SUNDAY. (SHINC)

29. **Discharging terms and conditions**

8,000 metric tons per weather working da y, Friday(s) Holiday(s) included of 24 c onsecutive h ours. (SUPERHOLIDAYS EXCL. UNLESS USED)
LAYTIME NON REVERSIBLE BETWEEN LOADING / DISCHPORTS
SUPERHOLIDAYS AS PER. BIMCO CALENDAR OF GENERAL HOLIDAYS.
This shall be used as basis for calculating the laytime.

- LAYTIME AT DISCHARGING PORT TO COUNT AT 14:00 HRS IF N.O.R.IS GIVEN BEFORE NOON OR AT 08:00 HRS NEXT WORKING DAY AFTER A SUPERHOLIDAY IF N.O.R. IS GIVEN DURING OFFICE HRS AT OR IN THE AFTERNOON (PHINC).
- SHIFTING TIME FROM ANCHORAGE TO BERTH NOT TO BE COUNT
- DRAFT SURVEY TIME NOT COUNT AS LAYTIME UNLESS MORE THAN 03 HOURS.
- LAYTIME WILL STOP COUNTING UPON COMPLETION OF LOADING RESPECTIVELY DISCHARGING. CARGO DOCS TO BE DELIVERED TO THE VESSEL LATEST W/IN 03 HRS AFTER COMPLETION OF DRAFT SURVEY'S. TIME IN EXCESS TO COUNT AS LAYTIME.
- LAYTIME AT DISCHARGING PORT TO CEASE AT 17:00 HRS ON DAY PRECEDING A SUPERHOLIDAY TILL 08:00 HRS ON DAY FOLLOWING A SUPERHOLIDAY UNLESS USED.
- TIME USED IF ANY BEFORE COMMENCEMENT OF LAYTIME TO COUNT BE.

N.O.R. TO BE TENDERED UPON VSL ARRIVAL LOADING / DISCHARGING , MASTER HAS THE RIGHT TO TENDER NOR W/W/W/W.
- NOR NOT TO BE TENDERED PRIOR LAYDAY'S.
- NOR AT DISCHPORT TO BE GIVEN ALWAYS W/IN OFFICE WORKING HOURS BETWEEN 08:00/17:00 MONDAY TO SUNDAY BUT SUPER HOLIDAY EXCLUDED. (PHINC)

# RIDER CLAUSES TO Mv Spar Orion / SUNMALL
## CHARTER PARTY DATED 05th Feb, 2008

30. **Weight Determination**
Weight shall be determined by vessel's draft at the port of loading by an independent sworn licensed marine surveyor. This surveyor will determine on weight which will be final as wet weight thus determined shall be the basis for Bills of lading.

31. **Load readiness**
Referring to Clause 28, if the vessel after berthing is not found ready in all respect to load, the Notice of Readiness should be cancelled. The laytime will commence after the vessel is all respect ready to load.

32. **Demurrage/Despatch**
Demurrage is payable at the rate of USD 39,000.- per day pro rata, despatch half demurrage for laytime saved

33. **Letter of Indemnity**
If original Bill of Lading is not available upon vessel arrival of discharging port, owner to agree to discharge/release cargo against charterer's Letter of Indemnity as per owners P and I wording which signed by both charterers and receivers.

34. **Shifting time**
Time consumed by the vessel for shifting to be for Owners account, the extra shifting due to cargoes to be for Charterers' account.

35. **P&I Cover**
Owners guarantee that the vessel has entered the Protection and Indemnity Club for normal full coverage.

36. **ITF Cover**
Owners warrant that vessel has on board a valid ITF Certificate or equivalent and that the Officers and Crew are employed by a contract acceptable to ITF. If the vessel is boycotted due to her flag/crew /nationality/Ownership, such time not to be counted.

37. **Protective Clauses**
New Jason Clause, New Both-to-Blame Collision Clause, P&I, Bunkering Clause, general paramount Clause, General Average Clause, chamber of Shipping War Risk Clause 1/2/3 to be deemed incorporated in this Charter Party and in all Bills of Lading issued hereunder. Furthermore following wording to be printed on Bills of Lading "All terms, conditions, exceptions including the Arbitration Clause of the relevant Charter Party are herein fully incorporated".

38. **Hold Condition**
In loadport NOR to be tendered with clean holds hatch open and ready in all respect to load any time after vessel have arrived at loading port whether in berth or not. If vessel not in free pratique on arrival at the berth due to causes attributable to the vessel, then a new NOR to be tendered.

39. **Payment terms**
FRT PYABLE ON BSL WEIGHT FIOT 100% LESS COMMISSION IN 5 B/DAYS AFTER SIGNING 'CONGENBILL' TYPE OF BILLS OF LADING BUT IN ANY CASE B.B.B. BSL TO BE MARKED 'FRT PAYABLE AS PER C/P', OR 'FREIGHT PREPAID' IN WHICH CASE BSL SHALL BE KEPT IN OWNERS CUSTODY AND RELEASED ONLY ONCE CHRTRS' BANKERS CONFIRM TO OWNERS' BANKERS BY A TESTED-KEY BANK-TO-BANK TLX CONFIRMATION THAT 100% FREIGHT HAS BEEN IRREVOCABLY TRANSFERRED TO OWNERS' NOMINATED BANK AND CHRRS CONFIRM THE FRT HAS BEEN PAID. (I.E. 100 PCT OF FREIGHT).



11/06 2008 10:26 FAX                                                                    ☏012/013

## RIDER CLAUSES TO Mv Spar Orion / SUNMALL
## CHARTER PARTY DATED 05th Feb., 2008

- FREIGHT DEEMED EARNED ON COMPLETION OF LOADING DISCOUNTLESS AND NON RETURNABLE SHIP AND OR CARGO LOST OR NOT.
- IN CASE OF ANY DISPUTE ON LAYTIME CALCULATIONS, CHRTRS TO PAY ON TO THE OWNERS THE UNDISPUTED AMOUNT AND THE DISPUTED AMOUNT TO BE ARRANGED AMICABLY OR VIA ARBITRATION.

B/L TO BE ISSUED/RELEASED UPON COMPLETION OF LOADING AT LOADING PORT AS PER MATE RECEIPT AND MARKED "FREIGHT PAYABLE AS PER CP"

Owners nominated bank as following:

Banking details:
Bulkhandling Handymax AS
P.o.box 182, Skoyen
0212 OSLO
NORWAY

Bank style:
DnB NOR Bank ASA, Oslo
Acct no: NO10 7093.04.62041
Swift: DNBANOKK
In favour of Bulkhandling Handymax AS via Bank of New York Mellon Corporation,
Swift: IRVTUS3N

### 40. Laycan/Nomination of vessel

Shipment period: 15th-22nd Feb, 2008

If the vessel fails to arrive within the period of laydays, the Charterers have the right to cancel the relevant voyage. Owners to have the option to substitute performing ship at any time under advice to Charterers without delay provided such vessel's intake is similar to the vessel unchanged and the laycan remains unchanged.

### 41. Cancelling

Should it appear that the vessel may not meet the agreed laycan, Owners are to advise Charterers accordingly and at the same time advise a revised laycan which should be within 3 days more or less compared with original laycan. Within twenty-four hours of receipt of such advice Charterers are to confirm whether or not they can accept the vessel basis the revised laycan. If failing Owners can consider themselves free from any commitments under this charter and seek other employment for their vessel. In the event the revised laycan is accepted by Charterers this charter(i.e. including this clause) to remain in full force and effect.

Within twenty-four hours of receipt of such advice Charterers are to confirm whether or not they can accept the vessel basis the revised laycan CHANGE TO 48 HOURS

### 42. Vessel description

MV SPAR ORION or substitute
BULK CARRIER NOR FLAG BLT 1996
47,639MT DWT ON 11.82M SSW TPC 50
LOA/BM 189.99M/30.5M
INTERNATIONAL GROSS/NET: 26449/16181
5/5 HO/HA

Page 4, Total 10 pages



## RIDER CLAUSES TO Mv Spar Orion / SUNMALL
## CHARTER PARTY DATED 05ᵗʰ Feb., 2008

GRAIN 59923 CBF/BALE 57372 CBF
4X25 MT - in grab operation 20 MT T CRANES + 4X8.0 m3 CBM GRABS
ABT 14K ON ABT 26.6MT(BV) ABT 13.5K ON ABT 26.6MT (C) IFO + ABT 0.1MT MDO
IN PORT IDLE/WORKING: ABT 2.1/ ABT 4.6MT IFO + ABT 0.2/ ABT 0.2MT MDO
IDLE/WORKING
ALL DETAILS ABOUT/WOG

If substitute vessel used which should be max 25 years age fitted with min 4 x 25 Mt crane + 4 x 8cbm grabs and to
be nominated to charterers latest 6 days prior to vessel ETA loading port. Charterers should confirm their
acceptance within 1.5 working day since receive owns nomination of the substitute vessel.

ALL SPEED AND CONSUMPTION FIGURES ARE AVERAGE FIGURES DURING C/P PERIOD. ALL SPEED
AND ALL CONSUMPTION FIGURES ARE TO BE CONSIDERED AS 'ABOUT'. AT SEA PERFORMANCE
FIGURES ARE CONSIDERED TO BE FROM SEABUOY TO SEABUOY IN MODERATE WEATHER
UPTO/INCLUDING BEAFORT 4, DOUGLAS SEA STATE 3, NOT IN ADVERSE CURRENT FUEL QUALITY
TO BE 380 CST WITHIN ISO 8217 (E) RMG 35 – 2005 DIESEL QUALITY TO BE DMA WITHIN ISO 8217 –
2005 MARPOL ANNEX VI CLAUSE TO BE INCORPORATED IN CP.

Owners guarantee vessel's cranes/grabs are in good working condition and can be freely used by
Charterers/Receivers.

OWNERS TO GUARANTEE THAT THE MINIMUM 4 SETS CRANES CAN LIFT MINIMUM 20MTNS
(INCLUDING WEIGHT OF GRABS) FOR THE DISCHARGING, IF NOT CAPABLE, TIME WILL BE
DEDUCTED PROPORTIONATELY.

### 43.Force Majeure

(A) A "Force Majeure Event" shall mean any circumstance not within
the reasonable control of the Party affected, which is:

(i) unforeseeable, and

(ii)cannot despite the exercise of reasonable diligence
be or be caused to be prevented, avoided or removed by such Party; and

(iii)materially and adversely affects the ability of such Party to perform its obligations under this Contract, and such
Party has taken all reasonable precautions, due care and reasonable alternative measures in order to avoid the effect of
such event on its ability to perform its obligation under the Contract (it being understood and agreed that unforeseen
expenses/ reduction in profit/increase of loss shall not be considered to be an effect of a Force Majeure Event unless is
results in the closing down of business); and

(iv) is not the direct or indirect result of the failure of such Party to perform any of its obligations under the Contract;
and

(v) of which such Party has given the other Party prompt notice describing the event and the actions being taken with
respect thereto, any failure to give such notice within 1 day resulting in the Party affected being prevented from
involving a Force Majeure Event.

(B) Subject to the foregoing, Force Majeure Events shall include but
not be limited to:

(i) acts of war or public enemy, whether war be declared or not, public disorders, insurrection, rebellion, sabotage,
riots or violent demonstrations, explosions, fires, earthquake or other natural calamities and Acts of God; and

Page 5, Total 10 pages



# RIDER CLAUSES TO Mv Spar Orion / SUNMALL
## CHARTER PARTY DATED 05th Feb, 2008

(ii) any reason not being the fault of the Owner as a result of which a nominated vessel is delayed at the load port, at the discharge port or in passage between these ports, including but not limited to breakdown or downtime of any nature beyond the reasonable control of Owner and bad weather, and

(iii) late redelivery of a nominated vessel from previous employment.

2. Effects of Force Majeure Event.

(A) In the event that either Party is rendered unable by reason of a Force Majeure Event to perform, wholly or in part, any obligation(s) set forth in the Contract, then such obligation(s) of such Party shall be suspended or excused to the extent of the effect of such a Force Majeure Event. Under no circumstances shall any Force Majeure Event excuse the Charterer from its obligation to make payments with respect to any cargo shipped prior to the occurrence of a Force Majeure Event.

(B) In the event of the occurrence of a Force Majeure Event, which prevents a Party from performing any of its obligations, such Party shall, among other things:

(i)  immediately notify the other Party; and

(ii) not be entitled to suspend performance for any greater scope or longer duration than is required by the Force Majeure Event; and

(iii) use all reasonable efforts to remedy its inability to perform and to resume full performance as soon as practicable; and

(iv) keep the other Party appraised of such efforts; and
(v) provide written notice of the resumption of performance hereunder.
(C) In the event that any Force Majeure Event will affect the loading of the cargo or any part of it when the nominated vessel is ready to proceed from her last port or at any time during the voyage to the port of loading or after her arrival there, the Owners may ask the Charterers to declare that they agree to recom the laydays as if there were no Force Majeure Event.

If Charterers have not given such declaration in writing (telex/fax/e-mail)within [24] hrs, Owners shall have the option of cancelling the shipment.
In case cp is cancelled , chtrs to compensate owners based on to cost based on agreed demurrage rate and cost of bunkers (based on Gibraltar cost at the time of cancellation) since passage from Cape Passero to loadport

If part cargo has already been loaded, Owners have the option proceed with same.it is fully understood that freight to be paid on the basis of vsl hvving loaded full and complete cargo.

c) In the event that any Force Majeure Event will affect the discharge of this cargo on or after the vessels arrival at or off the port of discharge, the Charterer shall have the option of keeping the vessel waiting until such Force Majeure Event is at an end against paying full demurrage after expiration of the agreed laytime, or of ordering the vessel to another safe port where she can safely discharge. On delivery of the cargo at such port all conditions of this Contract and the Bills of Lading shall apply and the Owners shall receive the same freight as if the vessel had been discharged at the original discharge port, except that if the distance of the substituted port exceeds 100 nautical miles, the freight shall be proportionally increased taking into consideration extra bunker consumed and the location of the port. In case the alternative port is located in a unfavorable position compared to the originally agreed port, then owners to be compensated accordingly.In case the port cost at the alternative port is higher than the orginally agreed port, then Chrts to compensate such additional cost.

44. Slow Steam
Owners is to have the privilege to operate performing vessel basis slow steaming weather and safe navigation permitting, and to replenish bunkers enroute.



# RIDER CLAUSES TO Mv Spar Orion / SUNMALL
## CHARTER PARTY DATED 05th Feb, 2008

**45. Suspension in Case of War**
Deleted

**46. Oil Pollution**
Notwithstanding any other provision of the Charter Party, Owners warrants that all vessel nominated under this contract shall comply in all respects with any anti-pollution act or regulation, which is now or may later come into effect imposed by any Government having jurisdiction over the port(s) of call covered by this contract.

**47. Law and Arbitration**
This Charter Party shall be governed by English Law and any dispute arising out of this Charter Party or any Bill of Lading issued thereunder shall be referred to arbitration of Hong Kong, one arbitrator being appointed by each party, in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. On the receipt by one party of the notification in writing of the appointment of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days failing which the decision of the single arbitrator appointed shall apply. If two arbitrators properly appointed shall not agree they shall appoint an umpire whose decision shall be final. The arbitrators shall be commercial men conversant with shipping matters.

**48. Notices**
On sailing to the loading port, Master or the Owners or the Owners' agent shall advise the ETA of the vessel to shippers and the Charterers, and again 7/5/3/2 days and 24 hours prior to vessel's expected arrival at loading port or at any time upon charterers request.

Master or Owners or Owners'agent shall give Charterers the following 5 notices of ETA at discharging port: on departure from loading port and 7 days / 72hours/48hours/24hours prior to ETA. The first notice shall indicate name of vessel, type and quantity of cargo and number of compartments.

**49. Agents**
Charterers' agents at both loading port and discharging ports always subject to reasonable port disbursements

**50. Confidentiality**
All negotiations to be kept strictly private and confidential.

**51. War Risk Clauses 1, 2, 3 of 1952**
(1) The Master shall not be required or bound to sign Bills of Lading for any blockaded port or for any port which the Master or Owners in his or their discretion consider dangerous or impossible to enter to reach.
(2a) If any port of lading or of discharging named in this charter party or to which the vessel may properly be ordered pursuant to the terms of the Bills of Lading be blockaded; or
(2b) If owing to any war, hostilities, warlike operations, civil war, civil commotions, revolutions or the operation of international law (a) entry to any such port of loading or discharging of cargo at any such port be considered by the Master or Owners his or their discretion dangerous or (b) it be considered by the Master or Owners in his or their discretion dangerous or impossible for the vessel to reach any such port of loading or of discharging – the Charterers shall have the right to order the cargo or such port of it as may be affected to be loaded or discharged at any other safe port respectively established under the provisions of the charter party (provided such other port is not blockaded or that entry thereto or loading or discharging of cargo thereat is not the Master's or Owners' discretion dangerous or prohibited).

If in respect of a port of discharge no orders be received from the Charterers within 48 hours after they have received from the Owners request for the nomination of a substitute port. The Owners shall then be



# RIDER CLAUSES TO My Spar Orion / SUNMALL.
## CHARTER PARTY DATED 05th Feb, 2008

at liberty to discharge the cargo at any safe port which they or the Master may in their or this discretion decide on (whether within the range of discharge ports established under the provisions of the Contract or Contracts of Affreightment so far as cargo so discharged in concerned. In the event of the cargo being loaded or discharged at any such other port within the respective range of loading or discharging ports established under the provisions of the charter party shall be read in respect of freight and all other conditions whatsoever as if the voyage performed were that originally designated.
In the event, however, that the vessel discharges the cargo at a port outside the range of discharging ports established under the provisions of the charter party, freight shall be paid as for the voyage originally designated and all extra expenses involved in reaching the actual port of discharge and/or discharging the cargo thereat shall be paid by the Charterers or cargo Owners. In this latter event the Owners shall have a lien on the cargo for all such extra expenses.

(1) The vessel shall have liberty to comply with any direction or recommendations as to departure, arrival, routes, ports of call, stoppages, destinations, zones, waters, delivery or in any otherwise whatsoever given by the Government or local authority including any de facto government or local authority of any such government or authority or by any committee or person having under the terms of the war risks insurance on the vessel the right to give any such directions or recommendations. If by reason of or in compliance with any such directions or recommendation, anything is done or is not done such shall not be deemed a deviation.

If by reason of or in compliance with any such direction or recommendations the vessel does not proceed to the port or ports of discharge originally designated or to which she may have been ordered pursuant to the terms of the Bills of Lading, Charterers shall have the right to order the cargo to discharge at any other safe port acceptable to Master or Owners within 48 hours after receiving Owners' request for alternative port(s) otherwise, the vessel may proceed to any safe port to discharge the cargo. Such discharge shall be deemed to be due fulfilment of the Contract or Contracts of Affreightment and the Owners shall be entitled to freight as if discharge has been effected at the port or ports originally designated or two which the vessel may have been ordered pursuant to the terms of the Bills of Lading. All extra expenses involved in reaching and discharging the cargo at any such other port of discharge shall be paid by the Charterers and/or cargo Owners and the Owners shall have a lien on the cargo for the freight and all such expenses.

ANY ADDITIONAL WAR RISK PREMIUM ON VESSEL/CREW TO BE FOR CHARTERERS ACCOUNT.

52. **War Risk Insurance**
Basic annual war risk insurance premium on hull and machinery including blocking/trapping to be for Owners account. Any additional war risk insurance on hull and machinery including blocking/trapping by reason of the trading area to be paid for by Charterers against underwriters debit note. Any insurance rebate /discounts /commissions due to Owners to be split 50/50 between Owners and Charterers. Insurance premium not to exceed that which would have been charged at Lloyds of London. Furthermore, any additional crew war bonus due to trading area to be for Charterers account.

53. B/L ISSUED SHALL BE CONGEN BILL EDITION 1994, B/L FIGUE SHALL BE AS PER DRAFT SURVEY CERTIFICATE.THE DATE OF THIS CP SHALL BE INSERTED IN THE PREARRANGED COLUMN FOR THIS IN THE B/L.

# RIDER CLAUSES TO M/v Spar Orion / SUNMALL

## CHARTER PARTY DATED 05ᵗʰ Feb. 2008

Bimco Standard War Risks Clause for Voyage Chartering 1993 (Code Name: VOYWAR 1993)

(1) For the purpose of this Clause, the words:

(a) "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution; rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy; acts of terrorism, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(2) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only if the Charterers refuse to nominate any other safe port which lies within the range for loading or discharging, a nd may o nly o nly on any of no cargo for which this Contract of Carriage if the Charterers sh all n ot have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyages, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain in any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the n ormal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(5) The Vessel shall have liberty:-

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or compel compliance with their orders or directions;

# RIDER CLAUSES TO M/v Spar Orion / SUNMALL
## CHARTER PARTY DATED 05th Feb, 2008

(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;

(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

For and on behalf of
Owners

For and on behalf of
Charterers

Bulkhandling Handymax As

Sunmall Marine Inc.

EXHIBIT 2

10/06 2008 16:34 FAX

FROM : EVERMONT INT'L LTD    FAX NO. : 886 2 26498009    Feb. 13 2008 04:59PM P1

@001/001

Hero (Joy dom + kjuti)

# EVERMONT INTERNATIONAL LTD.

To: Bulkhandling Handymax As

From: Evermont Int'l Ltd.

### Letter of Guarantee

DATE: 13 FEB, 2008

We ( Evermont International Ltd.) hereby guarantee the performance
of Sun mall Marine Inc. For following shipment

Vessel name: MV Spar Orion or Substitute
Laycan: 15th ~ 22nd / Feb ,2008
Cargo Quantity: 50,000 metric ton +/-10pct clinker in bulk
Loading port: 1sbp Rizhao port China
Discharging port: 1sbp of Mesaieed port, Qatar
End

Yours faithfully

For and on behalf of
中 邦 國 際 有 限 公 司
EVERMONT INTERNATIONAL LIMITED

Authorised Signature

# EXHIBIT 3

**THE TORVALD KLAVENESS GROUP**

www.klaveness.com

**ORIGINAL**

Operations Handymax

Sunmail Marine Inc
2F No 263, Sec 2 Da Tung Rd
HSI CHIH CITY TAIPEI HSIEN
TAIWAN

Revised

Oslo        21-apr-08

M/V Spar Orion/Sunmail Marine Inc CP dd 05.02.2008

We refer to above shipment. Please find below our laytime statement
amounting to:

**Usd  538 463,53**

| | | | |
|---|---|---|---|
| Demurrage Mesaleed | | usd | 562 692,60 |
| Less add comm | 2,50 % | usd | -14 067,32 |
| Less broker comm | 1,25 % | usd | -7 033,66 |
| Despatch Rizhao | | usd | -3 128,10 |
| Due to Bulkhandling Handymax AS | | usd | 538 463,53 |

Please arrange for
transfer to:

Den Norske Bank
Postboks 1171 Sentrum
0107 OSLO
Account no: NO10 7093 04 42044
Swift code: DNBANOKK
US Corresponding bank:
Bank of New York, New York
IRVTUS3N

Best Regards

*L. Bardina*

Svetlana Bardina

BULKHANDLING HANDYMAX AS

**Bulkhandling Handymax AS**
Haslevägen 2A
P.O.Box 182 Skoyen
N-0212 Oslo, Norway

Telephone:    +47 2252 8552
Telefax:      +47 2252 8762
Reg.:         No 864 094 206 MVA

E-mail:       Operations@Klaveness.com
Telex:        (56) 76686